**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 21, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LARRY COLLIER TAYLOR, JR.,

    Defendant - Appellant.

No. 09-6052

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 08-CR-00210-F-1)**

Chris M. Stephens, Assistant U.S. Attorney, (and Robert J. Troester, Acting United States Attorney and Wm. Lee Borden, Jr., Assistant U.S. Attorney, on the brief) Oklahoma City, Oklahoma, for Plaintiff - Appellee.

Donald A. Herring, Oklahoma City, Oklahoma, for Defendant - Appellant.

Before **KELLY**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendant-Appellant Larry Collier Taylor, Jr. was convicted by a jury of car jacking (count 1), bank robbery (count 2), and using a firearm during a violent crime (count 3). 18 U.S.C. §§ 2119, 2113(a) & (d) and 924(c)(1)(A). He was

sentenced to 181 months' imprisonment (97 months on counts 1 and 2, and 84 months on count 3, to run consecutively) and five years' supervised release. 1 R. at 183-85. On appeal, Mr. Taylor challenges the denial of his motion to suppress and challenges the sufficiency of the evidence on the car jacking conviction. Aplt. Br. at 10-11. We have jurisdiction under 18 U.S.C. § 1291 and affirm.

Background

We view this evidence in the light most favorable to the government. The odyssey in this case began on May 4, 2008, in Lawton, Oklahoma when Dana Wright returned home in her gray 2004 Pontiac Grand Am. 3 R. at 274-75, 277. Two men with covered faces approached. 3 R. at 275-76. One man had a gun and pointed it at her. 3 R. at 276. They told her to get down and took her keys. 3 R. at 277-78. The men drove off in the car. 3 R. at 278. Ms. Wright was unable to identify her assailants. 3 R. at 285.

On May 7, 2008, two masked men robbed the Peoples State Bank in Lawton. 3 R. at 391-92. One robber brandished a pistol and took the cash from the teller drawers. 3 R. at 392-94. A second robber pointed a gun at the bank president's head and told him to open the vault. 3 R. at 393-94. The president opened the vault, and the second robber put cash into a pillowcase. 3 R. at 394-95. The cash consisted of loose bills and strapped bundles of bills, and each strap had the bank's name on it. 3 R. at 397-98. The men fled. 3 R. at 394. A bank

-2-

audit confirmed that approximately $78,000 was taken in the robbery. 3 R. at 398.

That same day a police officer investigating the bank robbery found Ms. Wright's car parked blocks away from the bank. 3 R. at 278-79, 385-86. The car's vehicle identification number (VIN) indicated it was manufactured outside of Oklahoma. 3 R. at 388-89.

On May 20, 2008, two Houston, Texas police officers were looking for gang or criminal activity. 3 R. at 5-6. They saw a car run at least two stop signs and then fail to signal while crossing three lanes of traffic. 3 R. at 6, 10. The officers stopped the car and asked the driver, who later turned out to be Mr. Taylor, for his driver's license and proof of insurance. 3 R. at 10-12. Mr. Taylor said that he did not have a driver's license or other identification with him, that the car was a rental car, and he did not know if it was insured or not. 3 R. at 12. He added that his girlfriend's mother rented the car for him in El Paso and that his name was not on the rental agreement. 3 R. at 12. He did not have a copy of the rental agreement. 3 R. at 12. The officers arrested Mr. Taylor for his traffic violations and for not having a license, all Class C misdemeanors. 3 R. at 13-14; see Tex. Transp. Code Ann. §§ 521.025, 542.301, 543.001, 544.010, 545.104; Tex. Penal Code Ann. § 12.03.

The officers next decided to tow the car. 3 R. at 16. Houston Police Department policy provides that a vehicle owner arrested for a Class C violation

can avoid impoundment by either leaving his car where it is parked or turning it over to someone else. 3 R. at 18. The officers did not give Mr. Taylor this option because he did not own the car. 3 R. at 18-19, 92. They could not release the car to the car's passenger because he also lacked a driver's license. 3 R. at 15-16.

The officers then began an inventory of the car. 3 R. at 16. The Houston Police Department requires officers to list objects in a car at the time of impoundment so as to avoid liability for missing items. 3 R. at 16-17. The inventorying officer testified that it was his practice to search the car first and fill out the inventory sheet afterwards. 3 R. at 59-61. In the car's center console, the officer found a number of loose bills and a bank strap. 3 R. at 19-20, 79. In the trunk, he found a revolver and a backpack with a pillow case containing bundles of money strapped and with the name of the Peoples State Bank, Lawton, Oklahoma on the straps. 3 R. at 20-22, 332. In all, they found approximately $17,000. 3 R. at 333.

At this time, Mr. Taylor claimed ownership of the backpack and identified himself. 3 R. at 23-25. After running his name through their database, the officers discovered that Mr. Taylor had several outstanding warrants. 3 R. at 26. They decided not to issue citations but rather to hold Mr. Taylor on the warrants. 3 R. at 24-26. Mr. Taylor then inquired as to why he had been stopped and expressed surprise that his erratic driving had put an end to his flight. 3 R. at 80.

The Houston officers then turned the investigation over to the FBI. 3 R. at

65.  The officers never finished the inventory, although the FBI completed a written inventory.  3 R. at 62, 113.  The car's passenger consented to the search of his apartment, in which Mr. Taylor had a bedroom.  3 R. at 99-100, 106.  The agents found several thousand dollars more in Mr. Taylor's bedroom.  3 R. at 107, 115.

Later, Mr. Taylor told his cellmate (and soon to be informant), John Clyde Thomas, about a bank robbery and a car jacking he committed in Oklahoma.  3 R. at 355, 358.  Mr. Taylor told Mr. Thomas that he robbed a bank in Lawton and used a Pontiac as the getaway vehicle, a car he stole from a woman.  3 R. at 359-60, 362.

<br>

### Discussion

A.    Fourth Amendment Claim

Mr. Taylor argues that the district court should have suppressed all evidence obtained from his car and apartment, as well as any incriminating statements Mr. Taylor made.  Aplt. Br. at 15 (citing Wong Sun v. United States, 371 U.S. 471 (1963)).  Mr. Taylor preserved this claim when he moved to suppress this evidence before trial, 1 R. at 26-28, and when he objected to its admission at trial, 3 R. at 294, 298, 326, 328-29, 331, 334.

Mr. Taylor does not object to the legality of the traffic stop or his arrest. Cf. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  Instead Mr. Taylor

contends that the search of his car was illegal because the officers searched it without a warrant or probable cause. Aplt. Br. at 12-13. He maintains that the search was not a lawful inventory search justified under an exception to the warrant requirement. Aplt. Br. at 13-15. Inventorying the car was a pretext for investigation, he argues, given that the officers could have chosen not to tow the car and that the officers never produced an inventory. Aplt. Br. at 14-15.

The Fourth Amendment forbids unreasonable searches or seizures. Virginia v. Moore, 128 S. Ct. 1598, 1602 (2008). The reasonableness of a search or seizure under the Fourth Amendment is a question of law reviewed de novo. United States v. White, 584 F.3d 935, 944 (10th Cir. 2009). The government carries the burden of demonstrating reasonableness. White, 584 F.3d at 944. We review the district court's factual findings including the credibility of the witnesses for clear error and the evidence in the light most favorable to the government. Id.

Police may inventory impounded property to avoid liability for missing items. Colorado v. Bertine, 479 U.S. 367, 372 (1987). "[R]easonable police . . . inventory procedures administered in good faith satisfy the Fourth Amendment." Id. at 374. Granting police discretion over whether to impound and inventory a vehicle is permissible so long as officers exercise that discretion according to standardized criteria, and not "in bad faith or for the sole purpose of investigation." Id. at 372, 374-75.

-6-

The decision to tow the car was reasonable. Because Mr. Taylor did not own the car, the Department's policy did not allow the officers to either leave the car where it was or release it to another. 3 R. at 18-19, 92. The alleged lessee of the car was reportedly hundreds of miles away, so she could not claim the car. 3R. at 51-52. Under these circumstances, the officers' choice to secure the car and tow it was reasonable.

Once officers decide to tow a car, the Department requires them to make an inventory to safeguard a defendant's property. 3 R. at 16-17. The officers therefore had sufficient, non-investigatory motives for the inventory search.

Mr. Taylor contends that the inventory search was pretextual because the original officer did not complete the inventory. However, this only happened because the FBI took over the investigation, and the FBI completed the inventory. 3 R. at 62, 113. There is nothing unreasonable about a state officer inviting a federal law enforcement agency to assist given evidence of a significant federal crime. See United States v. Loaiza-Martin, 832 F.2d 867, 868-69 (5th Cir. 1987). "A change of plans does not convert a reasonable search into an unreasonable search." Aplee. Br. at 17.

Mr. Taylor challenges the admission of his statements and the search of his apartment as fruit of the poisonous tree (derivative evidence). Wong Sun, 371 U.S. at 487-88. This doctrine does not apply where a search is legal. Therefore the district court properly denied the motions to suppress.

Because we decide that the Fourth Amendment claim lacks merit, we need not address whether Mr. Taylor has standing to challenge the search of the rental car. See White, 584 F.3d at 956 n.12. We also need not consider whether the officers could justify the search as a good faith search incident to Mr. Taylor's arrest. See United States v. McCane, 573 F.3d 1037, 1041-45 (10th Cir. 2009) (discussing the good faith exception). Nor do we reach any other claims Mr. Taylor advanced at oral argument that were not included in his brief-in-chief.

B.      Sufficiency of the Evidence Claim

We review sufficiency of the evidence claims de novo, examining all evidence and drawing all reasonable inferences in the light most favorable to the government to determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. United States v Oldbear, 568 F.3d 814, 822-23 (10th Cir. 2009). Credibility determinations are the province of the trier of fact. We do not evaluate witness credibility or weigh conflicting evidence. United States v. Parker, 553 F.3d 1309, 1316 (10th Cir. 2009).

Mr. Taylor argues that insufficient evidence supports his conviction of car jacking because no evidence linked him to Ms. Wright's car. Aplt. Br. at 15-16. For a car jacking conviction under 18 U.S.C. § 2119, the government had to prove beyond a reasonable doubt: (1) that Mr. Taylor took a motor vehicle from the person or presence of another; (2) that he did so by force, violence or intimidation; (3) that he intended to cause death or serious bodily harm; and (4)

-8-

that the motor vehicle had been transported, shipped, or received in interstate or foreign commerce.  See United States v. Gurule, 461 F.3d 1238, 1243 (10th Cir. 2006).  Ms. Wright identified the stolen gray Pontiac as hers and testified that two men took her car after pointing a gun at her.  3 R. at 276-79.  The Pontiac's VIN indicated that Pontiac manufactured the car outside of Oklahoma.  3 R. at 388-89.

The testimony of Mr. Taylor's cellmate links Mr. Taylor to the car jacking. Mr. Thomas testified that Mr. Taylor told him that he had car jacked a Pontiac from a lady and used it as a getaway car in a bank robbery in Lawton.  3 R. at 355, 358-60, 362.  The jury was free to credit Mr. Thomas's testimony.  Viewing this testimony in the light most favorable to the government, there was sufficient evidence of Mr. Taylor's participation in the car jacking to support his conviction.

AFFIRMED.