**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Beverly Kim SANDERS,**
**Defendant–Appellee.**

**No. 14–1296.**

United States Court of Appeals,
Tenth Circuit.

Aug. 7, 2015.

J. Bishop Grewell, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the briefs), Office of the United States Attorney, Denver, CO, for Plaintiff–Appellant.

Howard A. Pincus, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the brief), Office of the Federal Public Defender, Denver, CO, for Defendant–Appellee.

Before LUCERO, BACHARACH, and McHUGH, Circuit Judges.

LUCERO, Circuit Judge.

We consider the constitutionality of a decision to impound a vehicle based on a community-caretaking justification. Such impoundments have been the topic of substantial debate and disagreement among our sibling circuits. In this case, police, for reasons not articulated in any policy, impounded a vehicle lawfully parked in a private lot after arresting its driver as she exited a store. They made no meaningful attempt to allow the driver, her companion, or the owner of the parking lot to make alternative arrangements. The district court granted a motion to suppress contraband found in the vehicle, and the United States filed an interlocutory appeal. After surveying Supreme Court and Tenth

Circuit precedent as well as persuasive authority from other circuits, we hold that when a vehicle is not impeding traffic or impairing public safety, impoundments are constitutional only if guided by both standardized criteria and a legitimate community-caretaking rationale. We conclude that the impoundment at issue in this case is unconstitutional for two reasons: it was not guided by standardized criteria, and was not justified by a legitimate community-caretaking rationale. Under our holding, either failure alone would be sufficient to establish unconstitutionality. Exercising jurisdiction under 18 U.S.C. § 3731, we **AFFIRM** the district court's grant of the motion to suppress.

## I

Police officers in Aurora, Colorado were looking for Beverly Sanders on an outstanding warrant for failure to comply with probation conditions related to a prior controlled substance conviction. They found a Mitsubishi Eclipse that they believed belonged to Sanders parked in the lot of a Goodwill store. Sanders and a companion, Ian Hussey, exited the store, walked to the car, and were ordered to the ground by police. Sanders was immediately arrested for the outstanding warrant. Although Sanders gave permission for a third party to come pick up the vehicle, the police did not ask Sanders whether she knew anyone who could remove the car.

Hussey was released after police cleared him of outstanding warrants, but he remained on the scene, inquiring about what would happen to the car and offering to contact someone to pick up the car, although he did not identify anyone specifically. Police were unwilling to release the car to Hussey because he did not have a valid driver's license. Approximately thirty seconds after Hussey was released, he was arrested when police found a baggie containing what appeared to be heroin near the location where he had been ordered to the ground during Sanders' arrest.

Aurora police use an impoundment form that contains a liability release, under which an arrestee may agree to release police from liability for any damage to or theft of their car, and also to leave their car in place for no more than 24 hours. Sanders was not asked by any officer to sign that waiver. The police nevertheless decided to impound the Eclipse out of fear that its contents, attractive exterior, and after-market accessories would lead to a break-in, particularly because it was located in a high-crime area after dark. One of the officers testified that she believed that the car would be broken into within two hours if left in the parking lot. Aurora has an ordinance listing 21 separate grounds for impounding a vehicle, but the vehicle being located in a high-crime area or being a likely target for a crime are not among them.

Having decided to impound the Eclipse, the police conducted an inventory search before removing it from the lot. They discovered what they believed to be drugs, including methamphetamine and Ecstasy, and related paraphernalia. Sanders was indicted for possessing controlled substances with intent to distribute. She moved to suppress the fruits of the inventory search. The district court granted the motion because the police impounded the car for reasons not listed in Aurora's impound policy. The government filed a timely interlocutory appeal.

## II

We review de novo the legal question of whether a seizure is reasonable

under the Fourth Amendment. *United States v. Serrato,* 742 F.3d 461, 470 (10th Cir.2014). The government bears the burden of proving that its impoundment of a vehicle satisfies the Fourth Amendment. *United States v. Ibarra,* 955 F.2d 1405, 1409 (10th Cir.1992). Seizure of the Eclipse, the government asserts, was justified by the community-caretaking exception to the warrant requirement. *See Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (explaining how and why law enforcement officers act in a community-caretaking capacity). To ascertain whether it was lawful for police to impound a vehicle legally parked in a private lot, over objection from its driver and not pursuant to any written policy of the municipality, we address the contours of the community-caretaking exception under Supreme Court precedent, our circuit caselaw, and caselaw from other circuits.

**A**

The Supreme Court has addressed the constitutionality of community-caretaking impoundments in several cases. In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Court provided several examples of lawful grounds for impoundment:

In the interests of public safety and as part of what the Court has called community caretaking functions, automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

*Id.* at 368–69, 96 S.Ct. 3092 (quotation and citation omitted).[1]

Later, in *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), a defendant argued that his Fourth Amendment rights were violated because Boulder, Colorado "departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place." *Id.* at 375, 107 S.Ct. 738. The Court rejected this argument because *Opperman* and another case, *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), allow for "the exercise

---

**1.** The district court relied in part on two cases, *Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), and *United States v. Tueller,* 349 F.3d 1239 (10th Cir.2003), which concern inventory searches, not impoundments. Though impoundments and inventory searches often occur sequentially, they are subject to different legal standards. *See, e.g., United States v. Haro–Salcedo,* 107 F.3d 769, 772–73 (10th Cir.1997) (analyzing impoundment and inventory search separately and discussing *Wells* only in the inventory search context). Because only an impoundment is challenged in this case, the district court should not have relied on *Wells* and *Tueller.* However, this misplaced reliance does not warrant reversal. "We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval,* 29 F.3d 537, 542 n. 6 (10th Cir.1994) (quotation omitted).

of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375, 107 S.Ct. 738. It reasoned that the police properly exercised the limited discretion granted to them by a city policy establishing when alternatives to impoundment are appropriate, and that "such conditions circumscribe the discretion of individual officers." *Id.* at 375–76 & n. 7, 107 S.Ct. 738.

*Opperman* and *Bertine* establish two different, but not inconsistent, rules regarding when impoundments are constitutional. The *Opperman* decision establishes that some warrantless impoundments are constitutional: namely, those required by the community-caretaking functions of protecting public safety and promoting the efficient movement of traffic. Meanwhile, the *Bertine* decision establishes that other warrantless impoundments are unconstitutional: namely, those justified by police discretion that is either exercised as a pretext for criminal investigation or not exercised according to standardized criteria. However, *Bertine* and *Opperman* leave a large number of impoundments open to case-based reasonableness judgments: namely, those carried out pursuant to standardized criteria but not justified by the public safety and traffic control goals of *Opperman*. Assessing when such impoundments are constitutional has generated controversy both within our circuit and among other circuits.

## B

We have addressed the legality of impoundments on several occasions. Most recently, we held that "[g]ranting police discretion over whether to impound and inventory a vehicle is permissible so long as officers exercise that discretion according to standardized criteria, and not in bad faith or for the sole purpose of investigation." *United States v. Taylor*, 592 F.3d 1104, 1108 (10th Cir.2010) (quotation omitted). However, the exact contours of when an impoundment is permissible under our circuit caselaw have not yet been precisely defined.

In *United States v. Pappas*, 735 F.2d 1232 (10th Cir.1984), we affirmed a district court's grant of a motion to suppress after a vehicle was impounded from a private lot pursuant to a policy that "requires the impounding of any vehicle whenever an arrest takes place, regardless of the circumstances." *Id.* at 1233. In so doing, we held that *Opperman* "cannot be used to justify the automatic inventory of every car upon the arrest of its owner." *Pappas*, 735 F.2d at 1234. We further observed that Pappas had friends who could have taken custody of the vehicle, that the vehicle was "legally parked in a private lot," and that the owner of the lot could have been consulted to see if the vehicle could remain there until Pappas returned. *Id.* at 1234.

A divided panel later considered a similar impoundment, but distinguished *Pappas* on the basis that Pappas' associates had ample opportunities to retrieve his vehicle. *United States v. Kornegay*, 885 F.2d 713, 716 (10th Cir.1989). Kornegay was arrested inside an auction house for selling stolen farm tractors, and his automobile was then impounded from the company's parking lot. *Id.* at 715. A majority of the panel concluded that the impoundment was constitutional in view of the following facts:

First, the agents here arrested a person whose real identity they did not know. Second, they did not know where he

lived. Indeed, they had been unable to identify him as coming from ... the place of residence he had listed with the auction company. Third, he was alone, and there was no friend, relative or companion who could be asked to care for the car. Fourth, they did not know where the vehicle was from. Fifth, the vehicle was not parked on his property, and the agents had every reason to believe that he would not be returning anytime soon to the auction company's lot to care for it himself. Sixth, to have left the vehicle in the auction company's parking lot—a lot open to the public—could have subjected it to vandalism or theft. The fact that the vehicle was legally parked in a parking lot does not, in and of itself, require the finding that impoundment was unnecessary.

*Id.* at 716. Judge McKay dissented, contending that the impoundment was both unreasonable and indistinguishable from the unlawful impoundment in *Pappas:*

> In this case, the defendant had parked his car in a lawful place and left it there to go inside to do business. It was there that he was arrested. I believe it goes well beyond any established Supreme Court precedent and beyond logic to ratify an "inventory" search based on the assertion that securing this vehicle under the circumstances was either necessary or permissible. The suggestion of some police duty to the car here argues too much. It was not unlawfully parked. It was not a traffic hazard. They had not stopped him while driving or otherwise removed him from his car. His arrest was no more associated with this car than the arrest of a shoplifter would be associated with his or her car. The facts of this case make what one often suspects is pretext, patent.

*Id.* at 719 (McKay, J., dissenting).

In *Ibarra,* a driver was cited for having an expired license. 955 F.2d at 1407. A Wyoming Highway Patrol officer transported Ibarra to a nearby location to make arrangements for someone with a valid license to pick up his vehicle, which the officer impounded without his consent. *Id.* Ibarra was later arrested when drugs were discovered in his car during an inventory search conducted after the impoundment. *Id.* at 1407–08. The district court granted a motion to suppress and we affirmed, holding that the impoundment was unconstitutional because the officer's decision to impound the vehicle did not meet any of the criteria for impoundment under Wyoming state law. *Id.* at 1408–09. We further reasoned that, as in *Pappas,* the officers did not make sufficient effort to allow Ibarra to provide alternatives for the custody of his vehicle, although we distinguished both *Pappas* and *Kornegay* because Ibarra had not yet been arrested when his vehicle was impounded. *Id.* at 1409, n. 4. Finally, we held that the search was unreasonable because the officer's testimony that the vehicle posed a public safety hazard lacked credibility, suggesting that the public safety rationale was pretextual. *Id.* at 1409–10.

Lastly, in *United States v. Maher,* 919 F.2d 1482 (10th Cir.1990) ("*Maher II*"), we reversed a district court's grant of a motion to suppress and upheld the impoundment of a trailer as both reasonable and "permissible under" the procedures of the impounding police department. *Id.* at 1487. As in *Pappas* and *Kornegay,* Maher's vehicle was "lawfully parked on private property." *United States v. Maher,* 724 F.Supp. 1348, 1357 (D.Wyo.1989) ("*Maher I*"); *see also Maher II,* 919 F.2d at 1483 (noting that facts are set forth in district court opinion). A local police procedure "allow[ed] the vehicle owner to make arrangements to secure the vehicle so that impoundment is not necessary."

*Maher II,* 919 F.2d at 1487. But we concluded that this procedure was inapplicable because the vehicle was "itself evidence of crime," making the impoundment permissible under the Fourth Amendment. *Id.* at 1487–88.

Our cases reaffirm the holdings of *Bertine* and *Opperman.* In *Taylor,* we recognized, citing *Bertine,* that standardized criteria generally must confine officer discretion to impound vehicles. 592 F.3d at 1108. Meanwhile, in *Ibarra,* we recognized that the "reasons of public safety" identified in *Opperman* can, if credibly present, provide a constitutionally sufficient basis for impoundment even absent guidance from standardized criteria. 955 F.2d at 1409. We also affirmed that impoundments must not be performed "in bad faith or for the sole purpose of investigation." *Taylor,* 592 F.3d at 1108 (quotation omitted).

## C

Other circuits have also grappled with the constitutionality of community-caretaking impoundments. The Eighth Circuit holds that such impoundments must be regulated by "[s]ome degree of standardized criteria or established routine." *United States v. Petty,* 367 F.3d 1009, 1012 (8th Cir.2004) (quotation omitted). It recognizes that officers may retain some discretion under departmental procedures, "[s]o long as the officer's residual judgment is exercised based on legitimate concerns related to the purposes of an impoundment." *Id.* Because the officers in *Petty* had a sufficient basis to impound the vehicle at issue pursuant to their policy of towing vehicles with no available drivers, the court upheld the impoundment as a legitimate exercise of the community-caretaking function. *Id.*

In *United States v. Duguay,* 93 F.3d 346 (7th Cir.1996), the Seventh Circuit held that an impoundment was unconstitutional because it followed neither written standardized criteria nor an unwritten policy. *Id.* at 351–52; *see also United States v. Cartwright,* 630 F.3d 610, 615 (7th Cir.2010) (holding that impoundment was constitutional because the police department had a "sufficiently standardized" policy that lawfully permitted impoundment under the facts of the case). The court further concluded the impoundment was unconstitutional because no legitimate community-caretaking rationale supported impounding a vehicle from a private parking lot after arresting a passenger outside of the vehicle, when a licensed driver capable of moving the car was present. *Duguay,* 93 F.3d at 352; *see also Cartwright,* 630 F.3d at 615 ("Unlike *Duguay,* where the officers impounded the car despite the presence on the scene of a licensed driver readily able to move it, the record in this case shows that the unlicensed [passenger] had no means of ensuring the speedy and efficient removal of her car from the parking lot." (citations and quotations omitted)). The Seventh Circuit concluded that the "suggestion that the police were obliged to impound the vehicle to protect it from theft or vandalism, strikes us as making up new police obligations after the fact where none existed before. The police do not owe a duty to the general public to remove vulnerable automobiles from high-crime neighborhoods." *Duguay,* 93 F.3d at 352 (quotation omitted).

The D.C. Circuit follows a subtly different approach. It holds that "if a standard impoundment procedure exists, a police officer's failure to adhere thereto is unreasonable and violates the Fourth Amendment." *United States v. Proctor,* 489 F.3d 1348, 1354 (D.C.Cir.2007) (emphasis add-

ed). Because the police did not follow their procedure requiring that arrestees be given the opportunity to arrange for the removal of their vehicle, the court concluded that the impoundment at issue was unlawful. *Id.*

The Ninth Circuit holds that decisions to impound vehicles cannot be left to unfettered officer discretion. *Miranda v. City of Cornelius,* 429 F.3d 858, 863 (9th Cir. 2005). In *Miranda,* that court considered the constitutionality of a decision to impound a vehicle parked in the driveway of its owner, a licensed driver. *Id.* at 864–65. It concluded that the vehicle created no impediment to traffic or public safety and that the officers had identified no adequate basis for impoundment; accordingly, the impoundment was not reasonable under the Fourth Amendment. *Id.* at 865–66.

The First, Third, and Fifth Circuits take a different approach. These circuits decline to ever look to the presence of standardized procedures, and instead conclude that reasonableness is the only test. *See United States v. McKinnon,* 681 F.3d 203, 208 (5th Cir.2012) ("[W]e have focused our inquiry on the reasonableness of the vehicle impoundment for a community caretaking purpose without reference to any standardized criteria."); *United States v. Smith,* 522 F.3d 305, 312–15 (3d Cir.2008) (rejecting "the requirement that a community caretaking impoundment be made pursuant to a standard police procedure"); *United States v. Coccia,* 446 F.3d 233, 239 (1st Cir.2006) (stating that it is "inappropriate for the existence of (and adherence to) standard procedures to be the sine qua non of a reasonable impound decision"). All three circuits justify their approach by interpreting *Bertine* and *Opperman. E.g., Coccia,* 446 F.3d at 238 ("Neither *Opperman* nor *Bertine* holds that the impound-

ment of a vehicle conducted in the absence of standardized protocols is a per se violation of the Fourth Amendment."). They also explain that focusing on reasonableness rather than the presence of standardized criteria is more consistent with the Fourth Amendment's text and purpose. *See, e.g., Smith,* 522 F.3d at 312 (3d Cir. 2008). And they identify policy reasons to prefer a reasonableness analysis, including that standardized criteria may have difficulty anticipating the varying circumstances under which impoundment decisions must be made. *See, e.g., Coccia,* 446 F.3d at 239.

There is a clear divide between the First, Third, and Fifth Circuits, which never consider whether an impoundment follows standardized procedures, and the Seventh, Eighth, Ninth, and D.C. Circuits. There are also subtle differences between the tests applied by the latter circuits. For instance, the D.C. Circuit's approach requires standardized procedures to be followed only *if* they exist, creating a perverse incentive to avoid the adoption of standardized procedures. *See Proctor,* 489 F.3d at 1354. Yet no circuit has held either that the existence of standardized procedures automatically renders an impoundment constitutional, or that the absence of standardized procedures automatically renders an impoundment unconstitutional.

**D**

■ We hold that impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale.

Our holding, like that of a majority of circuits, recognizes that *Bertine* makes the

existence of standardized criteria the touchstone of the inquiry into whether an impoundment is lawful. However, *Bertine* did not purport to overrule *Opperman,* and *Opperman* envisioned a situation in which an impoundment is immediately necessary, regardless of any other circumstances, in order to facilitate the flow of traffic or protect the public from an immediate harm. 428 U.S. at 368–69, 96 S.Ct. 3092. But to hold, as have the First, Third, and Fifth Circuits, that standardized criteria are never relevant is to ignore the plain language of *Bertine,* which holds that police discretion to impound a vehicle is constitutional only "*so long as* that discretion is exercised according to standard criteria." 479 U.S. at 375, 107 S.Ct. 738 (emphasis added). Our holding follows our prior circuit precedent in *Taylor, Ibarra,* and *Maher* in recognizing the centrality of standardized criteria, yet allowing broader officer discretion to protect public safety.

Our requirement that standardized criteria guide impoundments on private property ensures that police discretion to impound vehicles is cabined rather than uncontrolled. *Cf. Miranda,* 429 F.3d at 863 (observing that although, in *Bertine,* "the Supreme Court was not prepared to mandate any particular rules as to when impoundment incident to arrest for a traffic violation was permissible, impoundment is *not* a matter which can simply be left to the discretion of the individual officer" (quotations omitted)). Imposing heightened requirements on police who seize vehicles from private property is consistent with our circuit precedent and caselaw from other circuits. *See Opperman,* 428 U.S. at 365, 96 S.Ct. 3092 (explaining that the impounded vehicle was parked on the street in violation of a city ordinance); *Miranda,* 429 F.3d at 865 (describing the "location of the vehicle" as an important

criterion to consider when determining whether an impoundment is constitutional); *Pappas,* 735 F.2d at 1234 (rejecting constitutionality of impoundment in part because "the car was parked on private property"); *see also United States v. Duncan,* 763 F.2d 220, 224 (6th Cir.1985) (upholding impoundment in part because vehicle was parked on a "public highway").

Yet *Opperman* establishes that if a vehicle is obstructing or impeding traffic on public property, it can be impounded regardless of whether the impoundment is guided by standardized procedures. *See* 428 U.S. at 369, 96 S.Ct. 3092. By recognizing that standardized procedures need not justify impoundments of such vehicles, our holding is also faithful to our circuit precedent holding that officers should be free to impound vehicles that threaten public safety. *See Ibarra,* 955 F.2d at 1409 ("Clearly, police officers must have a certain amount of discretion in determining what threatens public safety."). For example, our holding allows officers from a rural county lacking a specific policy to impound a vehicle obstructing a highway, if that impoundment is reasonable and not pretextual, without fear of liability. *Cf. Smith,* 522 F.3d at 315 (observing that "a challenged impoundment may have been in a jurisdiction in which impoundments are so rare that the authorities within it quite reasonably never have seen any need to adopt impoundment standards").

█ Moreover, because our holding requires all community-caretaking impoundments to be supported by a reasonable, non-pretextual justification, it guards against arbitrary impoundments. *See Taylor,* 592 F.3d at 1108 (explaining that impoundments must not be made "in bad faith or for the sole purpose of investigation" (quotation omitted)). This rule en-

sures that even if the police were to adopt a standardized policy of impounding all vehicles whose owners receive traffic citations, such impoundments could be invalidated as unreasonable under our precedent. *Cf. Miranda,* 429 F.3d at 865–66. Protection against unreasonable impoundments, even those conducted pursuant to a standardized policy, is part and parcel of the Fourth Amendment's guarantee against unreasonable searches and seizures. *See id.* at 865 ("[T]he decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment...."); *see also Camara v. Mun. Court of S.F.,* 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (holding that the "basic purpose" of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials").

Ascertaining whether an impoundment is justified by a reasonable and legitimate, non-pretextual community-caretaking rationale is not an easy task. We note that courts have considered the following non-exclusive list of factors: (1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment.

**E**

■ Applying the rule elucidated above to the facts of this case, we conclude that the impoundment was impermissible because the officers were not guided by standardized criteria. The vehicle was legally parked in a private lot, and there is no evidence that it was either impeding traffic or posing a risk to public safety. Yet the record reveals that although Aurora's municipal code explicitly authorizes the impoundment of vehicles from *public* property in a list of enumerated circumstances, it nowhere mentions impoundment from *private* lots. It is therefore reasonable to infer that the code does not authorize, and moreover proscribes, the impoundment of vehicles from private lots. *Cf. Youren v. Tintic Sch. Dist.,* 343 F.3d 1296, 1308 (10th Cir.2003) ("Under the doctrine of *expressio unius est exclusio alterius,* to express or include one thing implies the exclusion of the other, or of the alternative." (quotation omitted)).

Aurora policy allowed police to offer Sanders the options of releasing them from potential liability if the vehicle was left in the lot or of having the vehicle towed by a private company. But there is no evidence that the police offered Sanders either of these options. Nor did they explain why they failed to mention these options. Unlike in *Maher,* the vehicle was not itself evidence of the crime for which Sanders was initially arrested, making the officers' failure to offer her these options relevant to our inquiry. *Cf.* 919 F.2d at 1487.

Lastly, unlike the policy upheld by the *Bertine* Court, which establishes "several conditions that must be met" before alternatives to impoundment are pursued, 479 U.S. at 376 n. 7, 107 S.Ct. 738, there is no evidence that Aurora policy limits officer discretion in deciding whether to impound a vehicle, leave it at the scene, or allow the arrestee to have it privately towed. Accordingly, the impoundment was unlawful both because the Aurora police did not impound the vehicle pursuant to Aurora's policies, and because those policies insufficiently limited officer discretion to impound vehicles from private lots. *Cf. Ibarra,* 955 F.2d at 1408–09.

■ Further, the impoundment was unlawful for an independently sufficient reason: it was not justified by a reasonable, non-pretextual community caretaking rationale. It was legally parked on private property, and there is no evidence in the record that the police consulted the owners of the parking lot about the vehicle remaining where it was. *Cf. Pappas,* 735 F.2d at 1234. Just as in *Ibarra,* police impounded Sanders' vehicle without offering her the opportunity to make alternative arrangements, even though she stated that she was willing to have someone pick up the vehicle on her behalf, and Hussey offered to find someone to pick it up for her. *Cf. Ibarra,* 955 F.2d at 1409. This makes the case unlike *Kornegay,* because police knew Sanders' identity, place of residence, the origin of her vehicle, and had other reasons to be assured that the vehicle would not be abandoned. *Cf.* 885 F.2d at 716.[2] Given that all these factors weigh against the decision to impound the vehicle, we hold that it was unreasonable for the officers to do so, and that they lacked a non-pretextual community-caretaking justification to do so. *See Taylor,* 592 F.3d at 1108 (impoundments must not occur for sole purpose of investigation).

### III

The district court's grant of the motion to suppress is **AFFIRMED.**

---

**2.** Although *Kornegay* listed preventing vandalism as permissible grounds for an impound, *see* 885 F.2d at 716, we recognize that other circuits have reached the opposite conclusion, *see Duguay,* 93 F.3d at 352. This is understandable, because the position of a vehicle in a "high-crime area" may well be a source of pretext, particularly when, as in this case, the owner or driver of a vehicle expresses a willingness to accept the risk of a break-in. However, we also recognize that there may be situations, as in *Kornegay,* in which there is no indication that a vehicle will ever be retrieved, making vandalism a legitimate concern. *See* 885 F.2d at 716.