**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 17, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID SANCHEZ,

    Defendant - Appellant.

No. 17-4000
(D.C. No. 2:15-CR-00690-JNP-PMW-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK,** and **BACHARACH**, Circuit Judges.
_____

A grand jury in the United States District Court for the District of Utah charged Defendant David Sanchez with one count of possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Alleging a violation of his Fourth Amendment rights, Defendant moved to suppress the methamphetamine obtained from the rental car he was driving. Following an evidentiary hearing, the district court denied the motion. Defendant then entered a conditional guilty plea that preserved his right to challenge the suppression ruling. *See* Fed. R. Crim. P. 11(a)(2). The district court sentenced Defendant to 40 months imprisonment and 36

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

months of supervised release and Defendant appealed.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

The relevant facts are undisputed.  On November 7, 2015, Utah Highway Patrol Trooper Jared Withers detected a black Dodge Avenger speeding eastbound on Interstate 70 near Green River, Utah.  Trooper Withers stopped the speeding vehicle, driven by Defendant.  Upon approaching the vehicle, Trooper Withers determined two passengers accompanied Defendant: Teresa Garcia, who occupied the passenger's seat, and a toddler, who was lying in the back seat without any safety restraints.  Trooper Withers explained the reason for the stop and asked Defendant for his driver's license and vehicle registration.  Defendant handed Trooper Withers a United States passport in Defendant's name and an expired rental contract between Enterprise Rent-A-Car and Alexis Fernandez, who was not in the vehicle.  Neither Defendant nor Garcia had authorization to drive the rental car and neither produced a valid driver's license.  In fact, the rental contract stipulated, "NO OTHER DRIVERS PERMITTED."

After reviewing the rental contract, Trooper Withers asked Defendant to accompany him to his patrol vehicle for additional questioning.  While in the patrol vehicle, Trooper Withers filled out a speeding citation and asked Defendant questions about the rental contract, Alexis Fernandez, and his intended destination.  Although Defendant was not fluent in English, he was able to understand Trooper

2

Withers's inquiries enough to explain that he and Garcia were en route to Colorado for a week, that his driver's license was suspended from a DUI citation, and that his friend, Alexis Fernandez, was in California.

While dispatch ran a driver's license, warrant, and criminal history check on Defendant, Trooper Withers walked his narcotic detector dog around the rental car. The dog did not alert. Upon returning to the patrol vehicle, Trooper Withers received information from dispatch confirming Defendant's DUI conviction and suspended driver's license. Trooper Withers asked Defendant for his consent to search the vehicle, even providing a consent form in Spanish to ensure Defendant understood Trooper Withers's request, but Defendant refused. Lacking Defendant's consent to search the rental car but still hoping to uncover drugs, Trooper Withers turned his attention to Enterprise Rent-A-Car, the owner of the vehicle. Dispatch contacted Enterprise to inform the company that Alexis Fernandez—the only authorized driver on the rental contract—was not in the vehicle, to alert them the vehicle was five days overdue, and to ask what Enterprise wanted Trooper Withers to do regarding the vehicle. Since no authorized driver was in the vehicle and the contract only authorized the vehicle's operation within California, Nevada, and Arizona, Enterprise determined the rental contract terms had been violated and requested the vehicle be impounded. Trooper Withers relayed Enterprise's request and explained to Defendant and Garcia that the rental car needed to be inventoried before it could be impounded.

3

The Utah Department of Public Safety Policy Manual (UDPSPM) requires an inventory when a vehicle is impounded. *See* UDPSPM § 504.5. Upon impound, "a case number shall be assigned and a written inventory shall be made of the contents of the vehicle, the trunk and any open or closed package, container, or compartment." *Id*. § 504.2.1. The purpose of the inventory procedure is to "protect[] an owner's property while in police custody, to provide for the safety of officers, and to protect the Department against fraudulent claims of lost, stolen or damaged property." *Id.* § 504.5. The inventory policy allows officers to make reasonable accommodations for a "driver/owner to remove small items of value or personal need (e.g. cash, jewelry, cell phone, prescriptions) which are not considered evidence or contraband" where removing such items "would not cause unreasonable delay in the completion of a vehicle impound/storage or create an issue of officer safety." *Id*. § 504.7.

With the impound requested, Trooper Withers, Defendant, and Garcia turned their attention to the inventory search. When Garcia requested to remove diapers and other items for the child, Trooper Withers agreed but told Garcia to wait "a few minutes" while he returned to his patrol vehicle. Flouting those instructions, Garcia began to remove personal items from the back seat. When Trooper Withers realized what Garcia was doing, he shouted, "Hey! No . . . let me see what you are grabbing." Following this exchange, Garcia placed one bag back in the rear seat, lifted the toddler out of the car, and retrieved items from the front seat of the rental.

4

Critically, at no point did either Defendant or Garcia ask to remove personal property from the trunk or from the glove box.

Shortly after the exchange between Trooper Withers and Garcia, Trooper Withers began to inventory the contents of the rental car. In the trunk, Trooper Withers observed several plastic garbage bags filled with men's clothing and a leopard print bag filled with women's clothing. Trooper Withers found a large, square mass that he recognized as methamphetamine inside one of the plastic bags. Based on this discovery, Trooper Withers arrested both Defendant and Garcia and then continued to inventory the remainder of the vehicle's contents. In total, Trooper Withers located ten packages of methamphetamine in the trunk. Trooper Withers completed the vehicle inventory in the glove compartment where he found two $1 bills and a straw that appeared to have methamphetamine residue on them. A tow truck arrived shortly thereafter to tow the rental car to an impound lot.

Upon indictment for possessing methamphetamine with intent to distribute, Defendant sought to suppress the evidence of drugs found in the rental car. In a thorough written order, the district court denied Defendant's motion. The court first determined Defendant had standing to challenge the search. Second, the court determined law enforcement properly undertook an inventory search of the vehicle. Third, the court ruled that Trooper Withers's motives for conducting the inventory did not invalidate the lawful search. On appeal, Defendant argues the inventory search was unlawful because (1) the UDPSPM inventory policy violates the Fourth

5

Amendment and (2) Trooper Withers's subjective intent to uncover evidence of a crime invalidated the search. Notably, Defendant does not dispute the stop was lawful, the decision to impound was lawful, and the inventory search was conducted according to the standard inventory policy.

## II.

When reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the Government and accept the district court's factual findings unless clearly erroneous." *United States v. Gilmore*, 776 F.3d 765, 768 (10th Cir. 2015). We review *de novo* the legal question whether a seizure was reasonable under the Fourth Amendment. *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205 (10th Cir. 2007). As a preliminary matter, the Government contends Defendant does not have standing to challenge the search of his personal property items within the car. Assuming without deciding that Defendant had standing to challenge the inventory search, Defendant's claim nevertheless fails because, applying the appropriate standard of review, the inventory search was proper.

## A.

When a vehicle is impounded, law enforcement officers follow standard procedures of securing and inventorying the vehicle's contents. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Defendant argues the UDPSPM inventory policy is inconsistent with the Fourth Amendment unless construed to permit the search and seizure of personal property in a rental car only if the property owner is

6

unavailable to maintain custody of his own property. The UDPSPM policy requires a "thorough and accurate" inventory of "all property in a stored or impounded vehicle." UDPSPM § 504.5. The only discussion regarding the availability of the driver or owner allows an officer to "make reasonable accommodations to permit a driver/owner to retrieve small items of value or personal need." UDPSPM § 504.7. Therefore the policy does not, as Defendant argues, only allow the search and seizure of personal property if the property owner is unavailable to retrieve it.

Since the policy allows officers to inventory the contents of an impounded vehicle even when the property owner is present and available, we turn to whether the policy violated the Fourth Amendment. Defendant appears to challenge the inventory policy as unconstitutional for two reasons: (1) it does not further a community caretaking function and (2) it does not allow a property owner who is present and available to maintain custody of his personal property. In support of his first proposition, Defendant cites *South Dakota v. Opperman*, 428 U.S. 364 (1976) and *United States v. Sanders*, 796 F.3d 1241 (2015). *Opperman* simply characterizes impoundment as a law enforcement "community caretaking function[]." *Opperman*, 428 U.S. at 368 ("In the interests of public safety and as part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." (citation omitted)) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). *Opperman* does not come close to requiring an *inventory search* to be justified by a community caretaking function. We decline to take the leap from

7

describing impoundments as "community caretaking functions" to requiring every inventory search to be justified by a community caretaking concern. *Sanders* goes a step further and requires *impoundments* to be justified by a community caretaking rationale. *Sanders*, 796 F.3d at 1248. As *Sanders* also noted, however, the standard for impoundment is different than the standard for an inventory search. *Id.* at n.1. It would be a vast expansion of *Sanders* to require inventory searches to be justified by a community caretaking concern. We know of no case yet to do so, and we decline to do so as well.

Second, Defendant challenges the policy as unconstitutional for requiring inventory searches even if the property owner is present and available to retain custody of his personal belongings. Defendant argues in that situation, no justification exists to take inventory of the personal property. At the same time, Defendant acknowledges the three purposes of an inventory search are: (1) to protect the owner's property while in police custody, (2) to protect the police against claims of lost or stolen property, and (3) to protect the police from potential danger. UDPSPM § 504.5. Although "an inventory search must be justified by the administrative purposes of such searches," Defendant does not adequately explain how this inventory was not justified by the second and third purposes of an inventory search. *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003).

Furthermore, given Defendant never asked to claim his personal effects from the vehicle before Trooper Withers began the search, Defendant essentially argues

8

law enforcement is required to ask a driver whether he wants to remove items from the vehicle prior to inventorying its contents. While giving Defendant an opportunity to remove the plastic garbage bags would have been possible, "the real question is not what 'could have been achieved,' but whether the Fourth Amendment *requires* such steps; it is not our function to write a manual on administering routine, neutral procedures of the stationhouse. Our role is to assure against violations of the Constitution." *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983). The Fourth Amendment simply does not require an officer to proactively ask an unauthorized driver of a car who does not assert ownership of items within the car whether the driver would like to remove items from the car before conducting an inventory. Such a rule would undermine the purposes that justify an inventory search. *See* UDPSPM § 504.5. In addition, Defendant concedes, "Of course, if a person declines to take custody of her own property, the community caretaking rationale might apply to legitimately bring any property she chooses to leave in the car within the custody of police." Def. Br. at n.2. By failing to assert ownership over the plastic bags in the trunk, Defendant declined to take custody of his property, which was properly brought within custody of the police. We therefore find no merit in this argument.

B.

Defendant also argues Trooper Withers's subjective intent to uncover evidence of a crime invalidated the search. An inventory search is invalid only if it is undertaken for the "*sole* purpose of investigation." *Colorado v. Bertine*, 479 U.S.

9

367, 372 (1987) (emphasis added). "While mixed motives or suspicions undoubtedly exist in many inventory searches, such motives or suspicions alone will not invalidate an otherwise proper inventory search." *United States v. Cecala*, 2000 WL 18948, *2 (10th Cir. 2000) (unpublished). Here, Trooper Withers impounded the vehicle because Enterprise requested the impound when it learned no authorized driver was in the area. Although Trooper Withers stated he hoped to search the vehicle for drugs, searching for drugs was not the sole motive for the inventory. Once Enterprise requested the impound, Trooper Withers was required to conduct the inventory search of the car and its contents. As a dual motive does not invalidate an otherwise lawful impound and inventory, we hold Trooper Withers's subjective intent to uncover evidence of a crime did not invalidate the lawful search.

The district court's denial of Defendant's motion to suppress is therefore AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge

10