# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP2052-CR |
| COMPLETE TITLE: | |

State of Wisconsin,
          Plaintiff-Respondent,
     v.
Kenneth M. Asboth, Jr.,
          Defendant-Appellant-Petitioner.

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 372 Wis. 2d 185, 888 N.W.2d 23
(2016 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 6, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 19, 2017 |
| | |
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dodge |
| JUDGE: | John R. Storck |
| | |
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Andrew Hinkel,* assistant state public defender, and oral argument by *Andrew Hinkel.*

For the plaintiff-respondent, there was a brief by *Ryan J. Walsh*, chief deputy solicitor general, with whom on the brief were *Brad D. Schimel*, attorney general, and *Misha Tseytlin*, solicitor general. Oral argument by *Ryan J. Walsh*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP2052-CR
(L.C. No. 2012CF384)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

      **v.**

**Kenneth M. Asboth, Jr.,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 6, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA GRASSL BRADLEY, J. Wisconsin courts have long applied a community caretaker exception to the warrant requirement under the Fourth Amendment to the United States Constitution. In this case, Kenneth M. Asboth, Jr., asks us to decide whether law enforcement officers' warrantless seizure of his car was a reasonable exercise of a bona fide community caretaker function. He also asks us to determine whether Colorado v. Bertine, 479 U.S. 367 (1987), requires officers to follow "standard criteria" when conducting a community caretaker impoundment. We hold that Bertine does not mandate adherence to standard criteria, and because we further conclude that officers

reasonably effected a community caretaker impoundment of Asboth's car, we affirm the decision of the court of appeals.

## I.  BACKGROUND

¶2  Asboth was a wanted man in November 2012.  He was a suspect in the armed robbery of a Beaver Dam bank, and there was an outstanding probation warrant for his arrest.  When police received a tip that he was at a storage facility in Dodge County, outside the City of Beaver Dam, both the Dodge County Sheriff's Department and Beaver Dam Police responded by sending officers to the storage facility to apprehend him.

¶3  The sheriff's deputy arrived first and saw a person matching Asboth's description reaching into the back seat of a car parked between two storage sheds.  Drawing his weapon, the deputy ordered the person to come out of the vehicle with his hands up.  Asboth, complying with the command, confirmed his identity after the deputy arrested him.  Officers from Beaver Dam soon arrived at the storage facility, and Asboth was placed in the back seat of a squad car until they could transport him for questioning.

¶4  After Asboth's arrest, his car remained parked at the storage facility.  None of the arresting officers asked Asboth if he could arrange to have the car moved.  Although the car sat in the middle of the alley between two storage sheds, space remained available for a vehicle to maneuver around it and drive through the alley.  The car, however, entirely blocked access to one storage unit, and it impeded access to several others.  When the officer ran a check of the car's registration, it identified

the car's owner as not Asboth but a different person with a City of Madison address.[1] Rather than abandoning the car on private property, or contacting the storage facility's owner about it, the officers chose to impound the car.

¶5 Both the Beaver Dam Police Department and the Dodge County Sheriff's Department had policies for officers to follow when deciding whether to impound a vehicle. The Beaver Dam policy provided:

> Any officer having a vehicle in lawful custody may impound said vehicle. The officer will have the option not to impound said vehicle when there is a reasonable alternative; however, the existence of an alternative does not preclude the officer's authority to impound.

The Dodge County policy provided more specific guidance:

> Deputies of the Dodge County Sheriff's Department are authorized to arrange for towing of motor vehicles under the following circumstances:
>
> When any vehicle has been left unattended upon a street or highway and is parked illegally in such a way as to constitute a definite hazard or obstruction to the normal movement of traffic;
>
> . . . .
>
> When the driver of a vehicle has been taken into custody by a deputy, and the vehicle would thereby be left unattended;
>
> . . . .

---

[1] Subsequent investigation revealed that the registered owner sold the car to Asboth, but neither Asboth nor the former owner notified the Department of Transportation of the transfer. Because of this omission, the officers did not know at the time of the arrest that Asboth actually owned the car.

> When removal is necessary in the interest of public safety because of fire, flood, storm, snow or other emergency reasons;
>
> . . . .
>
> Unless otherwise indicated, the deputy always has the discretion to leave the vehicle at the scene and advise the owner to make proper arrangements for removal.

¶6 Because the impound lot at the Dodge County Sheriff's Department was full, the officers and deputies agreed to tow the car to the Beaver Dam police station. Consistent with police department procedures, officers conducted an inventory search of the seized vehicle at the police station. The search turned up several items that the department held for safekeeping: a video game system, a cell phone, an MP3 player, keys, and an orange water bottle containing green leafy material. In the spare tire compartment beneath a false floor in the trunk, officers also found a pellet gun, which resembled the handgun used in the Beaver Dam robbery.

¶7 The State charged Asboth with armed robbery,[2] and he filed a motion to suppress all evidence obtained from the seizure and search of the car. Asboth's motion initially challenged the constitutionality of the inventory search itself. After hearing testimony from four police officers and sheriff's deputies involved with Asboth's arrest and with the seizure and search of his car, the Dodge County Circuit Court[3] denied

---

[2] See Wis. Stat. § 943.32(1)(b) and (2), § 939.50(3)(c), and § 939.62(1)(c) (2015-16).

[3] The Honorable John R. Storck, presiding.

Asboth's motion.   In its order denying the motion, the circuit court made findings relevant to the impoundment:   "[t]he vehicle could not be left where it was and needed to be impounded"; "[t]he officers involved believed that the vehicle belonged to someone other than [Asboth]"; and "[i]t is undisputed that Beaver Dam police conducted the inventory search according to established procedures."

¶8   Asboth filed a motion for reconsideration.   Relying on State v. Clark, 2003 WI App 121, 265 Wis. 2d 557, 666 N.W.2d 112, Asboth argued that the officers unconstitutionally seized the car from the storage facility.   Following a hearing at which Asboth supplemented the record with testimony by more officers, the circuit court denied the motion and made additional findings:

> (1) Both the Dodge County Sheriff's Department and the Beaver Dam Police Department's written policies favor[ed] impoundment . . . .
>
> (2) The vehicle was parked on another individual's property, not legally parked on a public street.
>
> (3) The vehicle was blocking access to more than one of the business's storage lockers and impeding travel by other customers through the complex.
>
> (4) There were valuable items in the vehicle including electronics.
>
> (5) Defendant was arrested while in possession of the vehicle, and was actually observed reaching into the vehicle.

Asboth pled no contest, and the circuit court imposed sentence of 10 years initial confinement followed by 10 years extended supervision.

¶9 In the court of appeals, Asboth challenged the circuit court's denial of his suppression motion, but he limited his argument to the constitutionality of the seizure of the car. State v. Asboth, No. 2015AP2052-CR, unpublished slip op., ¶1 (Wis. Ct. App. Sept. 29, 2016). Specifically, Asboth argued that the warrantless seizure was unconstitutional because it was not conducted pursuant to sufficiently detailed standardized criteria or justified by a bona fide community caretaker purpose. Id. Assuming without deciding that Bertine requires law enforcement officers to follow standardized criteria when seizing a vehicle, the court of appeals concluded that the Dodge County Sheriff's Department's policy applied and authorized the seizure. Id., ¶¶11, 20. Turning to Asboth's community caretaker argument, the court of appeals first rebuffed Asboth's contention that an investigatory purpose negated the bona fide community caretaker justification for the seizure, then concluded that the public need to move the car outweighed Asboth's privacy interests. Id., ¶¶24, 44. Accordingly, the court of appeals affirmed the circuit court's denial of the motion to suppress. Id., ¶45. Asboth petitioned this court for review, again limiting his argument to the constitutionality of the seizure, and we granted his petition.

6

## II. STANDARD OF REVIEW

¶10 We review an order granting or denying a motion to suppress evidence as a question of constitutional fact, which requires a two-step analysis. State v. Matalonis, 2016 WI 7, ¶28, 366 Wis. 2d 443, 875 N.W.2d 567, cert. denied, 137 S. Ct. 296. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." Id. (quoting State v. Robinson, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463).

## III. DISCUSSION

¶11 The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause." Article I, § 11 of the Wisconsin Constitution likewise provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated" and that "no warrant shall issue but upon probable cause." Because the Fourth Amendment and Article I, § 11 provide substantively identical protections, we have historically interpreted this section of the Wisconsin Constitution in accordance with United States Supreme Court interpretations of the Fourth Amendment. State v. Dumstrey,

7

2016 WI 3, ¶14, 366 Wis. 2d 64, 873 N.W.2d 502 (citing State v. Arias, 2008 WI 84, ¶20, 311 Wis. 2d 358, 752 N.W.2d 748).

¶12 "A seizure conducted without a valid warrant is presumptively unreasonable." State v. Brereton, 2013 WI 17, ¶24, 345 Wis. 2d 563, 826 N.W.2d 369 (citing United States v. Ross, 456 U.S. 798, 824-25 (1982)). "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" however, "the warrant requirement is subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). This court has recognized one such exception where a law enforcement officer is "serving as a community caretaker to protect persons and property." State v. Pinkard, 2010 WI 81, ¶14, 327 Wis. 2d 346, 785 N.W.2d 592.

¶13 Specifically, law enforcement officers may conduct a warrantless seizure without violating the Fourth Amendment when performing community caretaker functions——those actions "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." State v. Kramer, 2009 WI 14, ¶¶19-20, 315 Wis. 2d 414, 759 N.W.2d 598 (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). When evaluating a claimed community caretaker justification for a warrantless search or seizure, Wisconsin courts apply a three-step test, which asks

> (1) whether a search or seizure within the meaning of the Fourth Amendment has occurred; (2) if so, whether the police were exercising a bona fide community caretaker function; and (3) if so, whether the public interest outweighs the intrusion upon the privacy of

8

the individual such that the community caretaker function was reasonably exercised . . . .

Matalonis, 366 Wis. 2d 443, ¶31 (quoting Pinkard, 327 Wis. 2d 346, ¶29).

¶14 There is no dispute that a seizure of Asboth's car occurred within the meaning of the Fourth Amendment, so this case turns on the second and third steps of Wisconsin's community caretaker test. Asboth contends that the seizure satisfied neither the second nor the third steps because an overriding investigatory purpose negated the officers' bona fide community caretaker justification for moving the car, and the public interest in seizing his car did not outweigh his privacy interest in leaving it at the storage facility. Further, he insists that the seizure was not reasonable because it was not governed by standardized criteria sufficient to satisfy Bertine. We therefore consider in turn the second and third steps of the community caretaker test.

A. Bona Fide Community Caretaker Function

¶15 The community caretaker exception to the warrant requirement accounts for the multifaceted nature of police work. Kramer, 315 Wis. 2d 414, ¶32. As this court has observed, "Police officers wear many hats: criminal investigator, first aid provider, social worker, crisis intervener, family counselor, youth mentor and peacemaker, to name a few. . . . They are society's problem solvers when no other solution is apparent or available." Matalonis, 366 Wis. 2d 443, ¶29 (quoting Ortiz v. State, 24 So. 3d 596, 607 n.5 (Fla. Dist.

9

Ct. App. 2009) (Torpy, J., concurring and concurring specially)). Although a court assessing whether an officer acted for a bona fide community caretaker purpose "may consider [the] officer's subjective intent," this step of the test ultimately turns on whether the officer can "articulate[] an objectively reasonable basis" for exercising a community caretaker function. Pinkard, 327 Wis. 2d 346, ¶31 (quoting Kramer, 315 Wis. 2d 414, ¶36).

¶16 In South Dakota v. Opperman, 428 U.S. 364 (1976), the United States Supreme Court noted that "automobiles are frequently taken into police custody" by officers engaged in community caretaker functions. Id. at 368. The Court cited two non-exclusive examples of situations where police officers often take custody of vehicles: "[v]ehicle accidents," after which officers take custody of vehicles "[t]o permit the uninterrupted flow of traffic and in some circumstances to preserve evidence," and vehicles that "violate parking ordinances," "thereby jeopardiz[ing] both the public safety and the efficient movement of vehicular traffic." Id. at 368-69. In short, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge" in the community caretaker context. Id. at 369.

¶17 Citing Opperman's subsequent analysis of the constitutionality of an inventory search, the primary issue in that case, Asboth asserts that the officers' interest in investigating him as a potential suspect in the bank robbery

10

predominated over any bona fide community caretaker function they performed by moving the car. Furthermore, focusing on Opperman's examples——impoundment following an accident and impoundment following a parking ordinance violation——Asboth argues that the officers here did not have an objectively reasonable basis to tow his car from the storage facility to the police station.

¶18 For multiple reasons, we conclude that the officers possessed a bona fide community caretaker justification for impounding Asboth's car. First, if left unattended, the car would have inconvenienced a private property owner and customers at the storage facility by impeding the beneficial use of the property. Cf. United States v. Brown, 787 F.2d 929, 932-33 (4th Cir. 1986) (concluding that officers "could reasonably have impounded" arrestee's vehicle "because the car could have constituted a nuisance in the area in which it was parked"). Asboth's car obstructed the alley between the storage sheds, making it difficult for larger vehicles to pass through. The car wholly or partially blocked several storage units, limiting access for customers seeking to access their stored belongings. Because the car was on a third-party's private property, any expense for removing the obstruction would have fallen to a private property owner uninvolved in the arrest. By removing the car, the officers immediately remedied a potential disruption created by Asboth's arrest at the private storage facility, thus limiting the inconvenience to the property owner and customers.

11

¶19 Second, because Asboth was a suspect in a crime who also allegedly violated the terms of his probation, he likely faced a lengthy detention, and the possibility of a concomitant lengthy abandonment of the car counseled in favor of its removal from the premises. See United States v. Coccia, 446 F.3d 233, 240 (1st Cir. 2006) (noting that "officers properly made arrangements for the safekeeping of the [arrestee's] vehicle" when they anticipated that he "would be indisposed for an indeterminate, and potentially lengthy, period"). Impounding rather than abandoning Asboth's car protected the vehicle and its contents from potential theft or vandalism in his absence. See United States v. Kornegay, 885 F.2d 713, 716 (10th Cir. 1989) (citing potential "vandalism or theft" as one factor supporting impoundment). Indeed, the impoundment's protective function undermines Asboth's argument that the officers could have towed the car somewhere other than the police station; his car likely would have faced greater risk of vandalism or theft if abandoned in a public place rather than on private property. Although the later-discovered valuables were not in plain view at the time the officers towed the vehicle for impoundment, Asboth no doubt would have been upset to learn that his personal property was stolen from the car——regardless of whether officers decided to abandon it at the storage facility or in some other public place.

¶20 Finally, the registered owner of the car at the time of Asboth's arrest was someone other than Asboth. With no one else immediately present claiming ownership or otherwise

available to take possession of the vehicle, the possibility existed that officers would need to make arrangements to reunite the car with its registered owner. Moreover, the protective function of impoundment described above carries no less force (and perhaps more) for an absent registered owner than it would if officers knew that Asboth owned the car.

¶21 Collectively, the functions of removing an obstruction inconveniencing the property's users and protecting an arrestee's property during his detention, combined with uncertainty regarding the true ownership of the vehicle, establish that the officers had a bona fide community caretaker purpose when impounding Asboth's car. Because we identify these objective justifications for the impoundment, our cases make clear that, even if the officers had an additional investigatory interest in conducting a subsequent inventory search, the officers' subjective interests do not render the warrantless seizure of the car unconstitutional. See Kramer, 315 Wis. 2d 414, ¶32 ("[T]he officer may have law enforcement concerns, even when the officer has an objectively reasonable basis for performing a community caretaker function."). Consequently, we now proceed to the third step of the community caretaker test and assess the reasonableness of the seizure of Asboth's car.

B. Reasonableness of the Seizure

1. Standard Criteria

¶22 Before we consider the public interest in the impoundment along with Asboth's competing privacy interest, we

13

first address Asboth's argument that the seizure of his car was unreasonable because it was not impounded according to standard criteria. In particular, he contends that in Bertine the United States Supreme Court established that an impoundment will be constitutionally valid only if governed by "standard criteria" set forth in law enforcement procedures. See Bertine, 479 U.S. at 375.

¶23 Asboth's argument turns on language at the end of the Bertine opinion. Although Bertine generally focused on the constitutionality of an inventory search of Bertine's van, the Court concluded by addressing Bertine's argument that "the inventory search of his van was unconstitutional because departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place." 479 U.S. at 375. Rejecting Bertine's argument, the Supreme Court explained: "Nothing in Opperman or [Illinois v. Lafayette, 462 U.S. 640 (1983),] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Id. (emphasis added).

¶24 A split exists among the federal courts of appeals regarding Bertine's impact on impoundments by officers performing community caretaker functions. Several circuits agree with Asboth, to varying degrees, that law enforcement officers may constitutionally perform a warrantless community caretaker impoundment only if standard criteria minimize the

14

exercise of their discretion. See United States v. Sanders, 796 F.3d 1241, 1248 (10th Cir. 2015) ("[I]mpoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale."); Miranda v. City of Cornelius, 429 F.3d 858, 866 (9th Cir. 2005) ("The decision to impound must be guided by conditions which 'circumscribe the discretion of individual officers' in a way that furthers the caretaking purpose." (quoting Bertine, 479 U.S. at 376 n.7)); United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) ("Some degree of 'standardized criteria' or 'established routine' must regulate these police actions . . . ."); United States v. Duguay, 93 F.3d 346, 351 (7th Cir. 1996) ("Among those criteria which must be standardized are the circumstances in which a car may be impounded.").[4] Similarly, the District of Columbia Circuit has

---

[4] See also People v. Torres, 116 Cal. Rptr. 3d 48, 56 (Ct. App. 2010); Patty v. State, 768 So. 2d 1126, 1127 (Fla. Dist. Ct. App. 2000); State v. Weaver, 900 P.2d 196, 199 (Idaho 1995); People v. Ferris, 9 N.E.3d 1126, 1137 (Ill. App. Ct. 2014); Fair v. State, 627 N.E.2d 427, 433 (Ind. 1993); State v. Huisman, 544 N.W.2d 433, 437 (Iowa 1996); State v. Fox, 2017 ME 52, ¶¶23-26, 157 A.3d 778; Commonwealth v. Oliveira, 47 N.E.3d 395, 398 (Mass. 2016); People v. Toohey, 475 N.W.2d 16, 22-23 (Mich. 1991); State v. Robb, 605 N.W.2d 96, 104 (Minn. 2000); State v. Milliorn, 794 S.W.2d 181, 186 (Mo. 1990) (en banc); People v. O'Connell, 591 N.Y.S.2d 641, 642 (App. Div. 1992); State v. O'Neill, 2015-Ohio-815, ¶39, 29 N.E.3d 365 (Ct. App., 3d Dist.); McGaughey v. State, 2001 OK CR 33, ¶44, 37 P.3d 130.

held that, "if a standard impoundment procedure exists, a police officer's failure to adhere thereto is unreasonable and violates the Fourth Amendment." United States v. Proctor, 489 F.3d 1348, 1349 (D.C. Cir. 2007).

¶25 In contrast, three federal circuits do not afford dispositive weight to the existence of standardized criteria or to law enforcement officers' adherence thereto, instead treating such criteria as, at most, one factor to consider when assessing the Fourth Amendment reasonableness of a warrantless community caretaker impoundment.[5] The Fifth Circuit flatly rejects any need to consider standardized criteria as part of a reasonableness analysis. See United States v. McKinnon, 681 F.3d 203, 208 (5th Cir. 2012) ("Since Opperman and Bertine, we have focused our inquiry on the reasonableness of the vehicle impoundment for a community caretaking purpose without reference to any standardized criteria."). The Third Circuit has expressly recognized that a law enforcement officer's "decision to impound a vehicle contrary to standardized procedures or even in the absence of a standardized procedure should not be a per se violation of the Fourth Amendment." United States v. Smith, 522 F.3d 305, 312 (3d Cir. 2008).

¶26 Most persuasively, the First Circuit explained in United States v. Coccia, 446 F.3d 233 (1st Cir. 2006), its

---

[5] See also People v. Shafrir, 107 Cal. Rptr. 3d 721, 721-28 (Ct. App. 2010); Cannon v. State, 601 So. 2d 1112, 1115-16 (Ala. Crim. App. 1992).

16

reasons for "read[ing] Bertine to indicate that an impoundment decision made pursuant to standardized procedures will most likely, although not necessarily always, satisfy the Fourth Amendment." Id. at 238. After noting the established principle that "impoundments of vehicles for community caretaking purposes are consonant with the Fourth Amendment so long as the impoundment decision was reasonable under the circumstances," the court added that Fourth Amendment "reasonableness analysis does not hinge solely on any particular factor." Id. at 239. Like any other factor, standard criteria do not provide "the sine qua non of a reasonable impound decision":

> Virtually by definition, the need for police to function as community caretakers arises fortuitously, when unexpected circumstances present some transient hazard which must be dealt with on the spot. The police cannot sensibly be expected to have developed, in advance, standard protocols running the entire gamut of possible eventualities. Rather, they must be free to follow "sound police procedure," that is to choose freely among the available options, so long as the option chosen is within the universe of reasonable choices. Where . . . the police have solid, non-investigatory reasons for impounding a car, there is no need for them to show that they followed explicit criteria in deciding to impound, as long as the decision was reasonable.

Id. (quoting United States v. Rodriguez-Morales, 929 F.2d 780, 787 (1st Cir. 1991)). The First Circuit then proceeded to assess the reasonableness of the challenged impoundment. Id. at 239-41.

¶27 We agree with the First, Third, and Fifth Circuits that in cases involving warrantless community caretaker impoundments the fundamental question is the reasonableness of

17

the seizure. Accordingly, we hold that the absence of standard criteria does not by default render a warrantless community caretaker impoundment unconstitutional under the Fourth Amendment reasonableness standard. Nor does law enforcement officers' lack of adherence to standard criteria, if they exist, automatically render such impoundments unconstitutional.

¶28 The absence of a standard criteria requirement does not, as Asboth suggests, imbue law enforcement officers with "uncontrolled" discretion to impound vehicles at will as a pretext for conducting investigatory inventory searches. As the First Circuit observed in Coccia, under the reasonableness standard, "a police officer's discretion to impound a car is sufficiently cabined by the requirement that the decision to impound be based, at least in part, on a reasonable community caretaking concern and not exclusively on 'the suspicion of criminal activity.'" Coccia, 446 F.3d at 239 (quoting Bertine, 479 U.S. at 375). The second step of Wisconsin's community caretaker test requires law enforcement officers to establish that the warrantless impoundment occurred pursuant to a bona fide community caretaker purpose. Far from leaving officers with unlimited discretion to impound, Wisconsin's test authorizes law enforcement officers to conduct such warrantless seizures only if they have "an objectively reasonable basis for performing a community caretaker function." Kramer, 315 Wis. 2d 414, ¶32.

¶29 Finally, our conclusion that Bertine does not mandate adoption of or adherence to standard impoundment criteria for

18

all circumstances should not discourage law enforcement agencies from developing general impoundment procedures. "[A]doption of a standardized impoundment procedure . . . supplies a methodology by which reasonableness can be judged and tends to ensure that the police will not make arbitrary decisions in determining which vehicles to impound." Smith, 522 F.3d at 312. Indeed, adherence to sufficiently detailed standard criteria can enhance the reasonableness of an impoundment by limiting the exercise of discretion and encouraging compliant officers to identify and pursue the least-intrusive means of performing the community caretaker function. See United States v. Sharpe, 470 U.S. 675, 687 (1985) (noting that courts assessing law enforcement officers' actions must ask "not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it"). As we discuss further below, a Wisconsin court may consider the existence of, and officers' adherence to, standard criteria as a relevant factor when assessing the reasonableness of a community caretaker seizure.[6]

---

[6] Although in this case we discuss the standard impoundment criteria while assessing the reasonableness of the seizure, nothing in this opinion forecloses Wisconsin courts from considering officers' adherence to standard criteria when determining whether officers exercised a bona fide community caretaker function.

19

2. Reasonableness Inquiry

¶30 Under the third step of Wisconsin's community caretaker test, we evaluate the reasonableness of the law enforcement officer's exercise of a bona fide community caretaker function by "balancing [the] public interest or need that is furthered by the officer's conduct against the degree of and nature of the restriction upon the liberty interest of the citizen." Kramer, 315 Wis. 2d 414, ¶40. We generally consider four factors:

> (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

Id., ¶41 (quoting State v. Kelsey C.R., 2001 WI 54, ¶36, 243 Wis. 2d 422, 626 N.W.2d 777).

¶31 Taking the third factor first, we note that evaluation of a car's impoundment necessarily involves an automobile. This factor enters the analysis because "[i]n some situations a citizen has a lesser expectation of privacy in an automobile." State v. Anderson, 142 Wis. 2d 162, 169 n.4, 417 N.W.2d 411 (Ct. App. 1987) (citing New York v. Class, 475 U.S. 106, 112-13 (1986)). Although many of our recent community caretaker cases have raised questions regarding the appropriate scope of warrantless searches of homes, see, e.g., Matalonis, 366 Wis. 2d 443, ¶2; Pinkard, 327 Wis. 2d 346, ¶1, this case

20

involved Asboth's lesser privacy interest in his car. Therefore, law enforcement officers impounding a vehicle as community caretakers need not demonstrate the same extraordinary public interest necessary to justify a warrantless community caretaker entry into the home. See Pinkard, 327 Wis. 2d 346, ¶56 (observing that, as compared to an automobile, "one has a heightened privacy interest in preventing intrusions into one's home").

¶32 Turning to the public interest advanced by the impoundment, we circle back to the effect of Asboth's arrest on the storage facility's owner and customers: The public has a significant interest in law enforcement officers seizing from private property a vehicle that, if left unattended, would inconvenience the property's owner and users by impeding beneficial use of the property and creating a potential hazard——particularly when the officers are in lawful custody of the car. See Brown, 787 F.2d 929, 932-33. One of this court's decisions approving limited warrantless home entry by officers performing a community caretaker function specifically contemplates the possibility of officers acting for the similar purpose of abating a nuisance. See Pinkard, 327 Wis. 2d 346, ¶20 n.6 (quoting with approval United States v. Rohrig, 98 F.3d 1506, 1522-23 (6th Cir. 1996), which held that "officers' 'failure to obtain a warrant [did] not render that entry unlawful' where officers entered defendant's home to 'abat[e] an ongoing nuisance by quelling loud and disruptive noise'" (alterations in original)). Although we reserve judgment on such a home-entry

21

question for a future case, we do not hesitate to recognize that, even in the absence of the exigencies that often accompany community caretaker actions, the law enforcement officers here served a legitimate public interest by impounding an unattended vehicle that inconvenienced a private business and its customers and created a hazard by obstructing vehicle traffic through the storage facility.

¶33 The circumstances surrounding the impoundment also reflect the seizure's reasonableness. If abandoned by the officers, the car would have intruded on private property owned by a third party who had nothing to do with the arrest. And because Asboth was already under arrest at the time of the impoundment, officers did not make an improperly coercive show of authority to effect the seizure. See Kramer, 315 Wis. 2d 414, ¶43. To the contrary, the seizure actually complied with the terms of both the Beaver Dam and the Dodge County procedures governing impoundments.[7] The Beaver Dam policy permitted officers to impound a vehicle held "in lawful custody," and the officers took possession of the car after lawfully arresting Asboth. Additionally, the policy permitted officers to decide against impoundment if a "reasonable alternative" existed, but there was no sensible alternative available here. Providing more targeted guidance, the Dodge

---

[7] Because we conclude that the seizure complied with both departments' impoundment procedures, we need not decide which procedures actually governed.

22

County policy authorized deputies to tow a vehicle "[w]hen the driver of a vehicle has been taken into custody by a deputy, and the vehicle would thereby be left unattended." Again, officers lawfully arrested Asboth, and it was reasonable under the circumstances to infer that the person alone with the vehicle at the storage facility was its driver. The fact that the seizure did actually comply with the policies of the acting law enforcement agencies indicates that this impoundment was not an arbitrary decision but a reasonable exercise of discretion. See Smith, 522 F.3d at 312.

¶34 Notably, the fact that both policies actually cabined the officers' exercise of discretion also indicates that the officers acted reasonably when seizing Asboth's car. In Clark, the court of appeals disapproved of a policy permitting officers to tow a vehicle if "[the] vehicle is to be towed and the owner/driver is unable to authorize a tow." 265 Wis. 2d 557, ¶6. The court of appeals recognized that this policy was "wholly unhelpful" because it "offer[ed] no insight into why or when a vehicle may be seized," instead essentially "stat[ing] that 'a vehicle is to be towed for safekeeping when a vehicle is to be towed.'" Id., ¶15. Here, the Beaver Dam and Dodge County policies avoided such circular reasoning by limiting impoundment to situations where officers had custody of, respectively, the vehicle itself or its driver. Rather than allowing officers to impound a vehicle at will any time the vehicle's driver was unavailable, as the policy in Clark authorized, both policies in this case permitted impoundment only as a natural consequence of

23

law enforcement action that would otherwise result in the vehicle's abandonment.

¶35 Finally, the lack of realistic alternatives to impoundment further reinforces the reasonableness of the seizure. Asboth was alone at the storage facility, so he did not have a companion who could immediately take possession of the car. Admittedly, the officers did not offer Asboth the opportunity to make arrangements for moving his car after his arrest, but nothing required them to do so. See United States v. Arrocha, 713 F.3d 1159, 1164 (8th Cir. 2013) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." (quoting United States v. Agofsky, 20 F.3d 866, 873 (8th Cir. 1994), which cited Bertine, 479 U.S. at 372)); see also Rodriguez-Morales, 929 F.2d at 786. In fact, given the uncertainty arising from the fact that Asboth was not the car's registered owner, taking possession of the car to investigate its ownership may have been more reasonable than outright returning the car to Asboth.[8]

---

[8] The clear absence of feasible alternatives to impounding Asboth's car further distinguishes this case from State v. Clark, 2003 WI App 121, 265 Wis. 2d 557, 666 N.W.2d 112, in which the court of appeals also held that the public interest in towing an unlocked vehicle from the Milwaukee streets did not outweigh the intrusion into the owner's privacy. Id., ¶27. An officer investigating shots fired in the area ordered the legally parked but unlocked vehicle towed "to ensure that the vehicle itself and any property inside the vehicle would not be stolen." Id., ¶23. The court of appeals held that the community caretaker exception did not apply because the officer could have "(1) locked the vehicle and walked away; [or] (2) (continued)

24

¶36 Considering all of these factors together, we conclude that law enforcement's removal of an unattended car that would otherwise create a potential hazard while also inconveniencing owners and users of private property[9] outweighed Asboth's lesser privacy interest in that car. Because the officers advanced that public interest in pursuit of a bona fide community caretaker function, we hold that the warrantless seizure of Asboth's car after his arrest was constitutionally reasonable under the Fourth Amendment.

## IV. CONCLUSION

¶37 "The touchstone of the Fourth Amendment is reasonableness." State v. Tullberg, 2014 WI 134, ¶29, 359 Wis. 2d 421, 857 N.W.2d 120 (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)). Applying Wisconsin's test for the community caretaker exception to the Fourth Amendment's warrant requirement, we conclude that law enforcement officers acted

---

attempted to contact the owners of the vehicle in light of his belief that the vehicle or its contents may be stolen." Id., ¶27.

[9] The array of factors demonstrating the reasonableness of the officers' decision to impound Asboth's car defeats any argument that this opinion delineates a per se rule "justify[ing] the seizure of every vehicle after its driver has been arrested." Dissent, ¶76. As with any warrantless community caretaker search or seizure, law enforcement officers acting as bona fide community caretakers may impound an arrested person's vehicle without a warrant only if the facts establish a countervailing public interest in conducting the seizure that outweighs any infringement on the arrested person's liberty interest.

reasonably when seizing Asboth's vehicle for impoundment. Although we conclude that the officers here complied with both relevant departmental impoundment policies, we also hold that Bertine does not mandate such adherence to satisfy the Fourth Amendment's reasonableness standard.  Accordingly, we affirm the decision of the court of appeals.

*By the Court.*──The decision of the court of appeals is affirmed.

¶38 ANN WALSH BRADLEY, J. *(dissenting).* The majority bucks the nationwide trend when it determines that the Fourth Amendment to the United States Constitution does not require that police follow standardized procedures during a community caretaker impoundment. Adopting the minority rule followed by three federal circuits, it reasons that standardized procedures are unnecessary because police discretion is sufficiently limited by the requirement that impoundments be based on a reasonable community caretaker concern.

¶39 Compounding its misdirection, the majority further errs by expanding an already bloated community caretaker exception to the Fourth Amendment's warrant requirement. It appears that yet again this court's "expansive conception of community caretaking transforms [it] from a narrow exception into a powerful investigatory tool." State v. Matalonis, 2016 WI 7, ¶106, 366 Wis. 2d 443, 875 N.W.2d 567 (Prosser, J., dissenting).

¶40 Contrary to the majority, I would follow the national trend as illustrated by the well-reasoned approach of the Tenth Circuit in U.S. v. Sanders, 796 F.3d 1241 (2015). It determined that "impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale." Sanders, 796 F.3d at 1248.

¶41 Applying the Sanders test, I conclude that the warrantless impoundment of Asboth's vehicle violated his Fourth

1

Amendment rights. His vehicle neither obstructed traffic nor created an imminent threat to public safety. Additionally, the standardized policies here fail to place any meaningful limits on police discretion and the asserted rationale for the community caretaker impoundment is unreasonable.

¶42 Accordingly, I respectfully dissent.

I

¶43 The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . ." Community caretaker impoundments are an exception to the Fourth Amendment's warrant requirement. State v. Pinkard, 2010 WI 81, ¶14, 327 Wis. 2d 346, 785 N.W.2d 592. Given the importance of the privacy interests involved, this exception should be narrowly construed. See Arizona v. Gant, 556 U.S. 332, 345 (2009) (instructing that a motorist's privacy interest in his vehicle is "important and deserving of constitutional protection.").

¶44 In Gant, the United States Supreme Court expanded motorists' privacy rights when it narrowed its prior decision in New York v. Belton, 453 U.S. 454 (1981). Belton had previously been read so broadly as to authorize a vehicle search incident to every arrest of any occupant of a vehicle. See Gant, 556 U.S. at 343.

¶45 The Gant court explained that "[c]onstruing Belton broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis." Id. at 347. Accordingly, Gant limited searches incident to arrest to two circumstances: either when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or when it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle. Id. at 343.

¶46 In order to address the same concerns in the context of vehicle impoundments, the national trend has been to adopt a two-part test that resembles Gant's narrowing of Belton. This test, like the test adopted in Gant, prioritizes motorists' privacy rights over deference to police discretion. It limits police discretion regarding impoundments by requiring both a standardized policy governing impoundment and a "reasonable, non-pretextual community-caretaking rationale." Sanders, 796 F.3d at 1248.

¶47 The question of whether a community caretaker impoundment of a vehicle must be governed by a standardized policy is an issue of first impression in Wisconsin. However, the United States Supreme Court has instructed that the exercise of police discretion must be "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987).

3

¶48 A majority of federal and state appellate courts that have addressed this issue have concluded that a warrantless community caretaker impoundment is constitutional only if there exists standardized criteria limiting police discretion. See, e.g., United States v. Sanders, 796 F.3d 1241, 1248 (10th Cir. 2015); United States v. Proctor, 489 F.3d 1348, 1353-54 (D.C. Cir. 2007); Miranda v. City of Cornelius, 429 F.3d 858, 866 (9th Cir. 2005); United State v. Petty, 367 F.3d 1009, 2012 (8th Cir. 2004); United States v. Duguay, 93 F.3d 346, 351 (7th Cir. 1996); Patty v. State, 768 So. 2d 1126, 1127 (Fla. Dist. Ct. App. 2000); State v. Weaver, 900 P.2d 196, 199 (Idaho 1995); People v. Ferris, 9 N.E.3d 1126, 1137 (Ill. Ct. App. 2014); Fair v. State, 627 N.E.2d 427, 433 (Ind. 1993); State v. Huisman, 544 N.W.2d 433, 437 (Iowa 1996); Com. v. Oliveira, 47 N.E.3d 395, 398 (Mass. 2016); State v. Robb, 605 N.W.2d 96, 104 (Minn. 2000); State v. Milliorn, 794 S.W.2d 181, 186 (Mo. 1990); State v. Filkin, 494 N.W.2d 544, 549 (Neb. 1993); People v. O'Connell, 188 A.D.2d 902, 903 (N.Y. App. Div. 1992); State v. O'Neill, 29 N.E.3d 365, 374 (Ohio Ct. App. 2015); McGaughey v. State, 37 P.3d 130, 142-43 (Okla. Crim. App. 2001).

¶49 Yet, the majority follows the minority view of three federal circuits, determining that in cases involving warrantless community caretaker impoundments that standardized policies are not necessary. United States v. McKinnon, 681 F.3d 203, 208 (5th Cir. 2012); United States v. Smith, 522 F.3d 305, 312 (3d Cir. 2008); United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006). It reasons that standardized procedures

4

are unnecessary because police discretion is sufficiently limited by the requirement that impoundments be based on a reasonable community caretaker concern.

¶50 According to the majority, "the fundamental question is the reasonableness of the seizure." Majority op., ¶27. It contends that the absence of standard criteria does not "imbue law enforcement officers with 'uncontrolled' discretion to impound vehicles at will as a pretext for conducting investigatory searches." Majority op., ¶28. However, as set forth in more detail below, that is exactly what happened here.

¶51 The Tenth Circuit's decision in Sanders is illustrative of the national trend. In Sanders, for "reasons not articulated in any policy, [police] impounded a vehicle lawfully parked in a private lot after arresting its driver as she exited a store." Id. at 1242. The police made "no meaningful attempt to allow the driver, her companion, or the owner of the parking lot to make alternative arrangements." Id.

¶52 Sanders acknowledged that "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." Id. at 1244 (quoting South Dakota v. Opperman, 428 U.S. 364, 368-69 (1976)). It further explained that Opperman and Bertine establish "two different, but not inconsistent, rules regarding when impoundments are constitutional." Id. at 1245. Opperman establishes that warrantless impoundments required by the community caretaking functions of protecting public safety and promoting the efficient movement of traffic

5

are constitutional. Id. Bertine establishes that warrantless impoundments are unconstitutional if justified by either a "pretext for a criminal investigation or not exercised according to standardized criteria" that limits police discretion. Id.

¶53 After surveying United States Supreme Court and federal circuit precedent, Sanders concluded that "impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale." Id. at 1248.

¶54 Deviating from the nationwide trend, the majority limits motorists' privacy rights. Contrary to the majority, I would follow the national trend protecting motorists' privacy rights under the Fourth Amendment and require both a standardized policy that limits police discretion and a reasonable community caretaker rationale.

A

¶55 Applying the test set forth above, I turn to the question of whether the policies in this case sufficiently limited officer discretion to impound vehicles from private lots.[1]

---

[1] The parties disagree regarding which policy governed the impoundment, but as set forth below, this issue is not dispositive to my analysis because neither policy sufficiently limits police discretion.

6

¶56 The Beaver Dam Police Department policy provides no limitations. In essence, it states that any officer having a vehicle in lawful custody may impound that vehicle:

> Any officer having a vehicle in lawful custody may impound said vehicle. The officer will have the option not to impound said vehicle when there is a reasonable alternative; however, the existence of an alternative does not preclude the officer's authority to impound.

¶57 Likewise, the Dodge County Sheriff's Department policy governing impoundment provides that deputies are authorized to tow when "the driver . . . has been taken into custody by a deputy, and the vehicle would thereby be left unattended." Additionally, it states that unless otherwise indicated, "the deputy always has the discretion to leave the vehicle at the scene and advise the owner to make proper arrangements for removal."[2]

---

[2] The sheriff's department policy states in relevant part:

> Deputies of the Dodge County Sheriff's Department are authorized to arrange for towing of motor vehicles under the following circumstances:

> When any vehicle has been left unattended upon a street or highway and is parked illegally in such a way as to constitute a definite hazard or obstruction to the normal movement of traffic;

> . . .

> When the driver of a vehicle has been taken into custody by a deputy, and the vehicle would thereby be left unattended;

> . . .

(continued)

7

¶58 Having determined that standardized policies are not constitutionally required, the majority nevertheless considers the policies in the context of whether the seizure was reasonable.

¶59 According to the majority, both policies cabined the officers' discretion because they limit impoundment "to situations where officers had custody of, respectively, the vehicle itself or its driver." Majority op., ¶34. After concluding that the standardized policies in this case are sufficient, the majority determines that "[t]he fact that the seizure did actually comply with the policies of the acting law enforcement agencies indicates that this impoundment was not an arbitrary decision but a reasonable exercise of discretion." Majority op., ¶33.

¶60 The majority errs because neither policy limits police discretion. First, it is unclear how the Beaver Dam policy, which allows impoundments whenever officers have custody of a vehicle, provides any limitation at all. How can the police impound a vehicle without having custody of it? The policy's directive is circular.

---

When removal is necessary in the interest of public safety because of fire, flood, storm, snow or other emergency reasons;

. . .

Unless otherwise indicated, the deputy always has the discretion to leave the vehicle at the scene and advise the owner to make proper arrangement for removal.

8

¶61 Second, the majority errs because the Dodge County policy limits police discretion only when a driver <u>is not</u> in custody. The Fourth Amendment's protections against warrantless seizures of property continue to apply after a driver has been arrested. Indeed, the question of whether standardized procedures are required has arisen in such seminal cases as <u>Bertine</u> only after the defendant has been arrested. <u>See, e.g.,</u> <u>Bertine</u>, 479 U.S. at 368-369.

¶62 The majority misses the point because the question in this case is whether the policies limit police discretion in determining whether to impound a vehicle after a defendant has been arrested. Both policies give the police unfettered discretion to impound a vehicle when a driver such as Asboth has been arrested.

¶63 The purpose of standardized criteria is to establish why or when a vehicle may be taken into custody, but here neither policy offers any guidance on this question. In <u>State v. Clark</u>, the court of appeals addressed the Milwaukee Police Department towing policy, explaining that when a policy offers no insight into why or when a vehicle may be seized, it is "wholly unhelpful." 2003 WI App 121, ¶15, 265 Wis. 2d 557, 666 N.W.2d 112.

¶64 Neither policy limits officer discretion "in deciding whether to impound a vehicle, leave it at the scene, or allow the arrestee to have it privately towed." <u>Sanders</u>, 796 F.3d at 1250. In contrast, the policy in <u>Bertine</u> "related to the feasibility and appropriateness of parking and locking a vehicle

9

rather than impounding it." Bertine, 479 U.S. at 378. No such detail governs officer discretion here.

¶65 Accordingly, the policies in this case, as in Sanders, "insufficiently limited officer discretion to impound vehicles from private lots." Sanders, 796 F.3d at 1250.

B

¶66 Having determined that the impoundment was not done in accordance with constitutionally sufficient standardized policies, I could end my analysis here because a community caretaker impoundment is unconstitutional without standardized procures that limit police discretion. The majority, however, concludes that the police reasonably effected a community caretaker impoundment of Asboth's car. Majority op., ¶1. Accordingly, I turn now to the question of whether the police conduct in this case was a valid exercise of the community caretaker authority.

¶67 The majority concludes that there are a number of "objective justifications for the impoundment" that establish the police had a bona fide community caretaker purpose. Majority op., ¶21. Initially, it contends that if left unattended, Asboth's car would have "inconvenienced a private property owner and customers at the storage facility by impeding the beneficial use of the property." Majority op., ¶18. Yet, the hearing testimony demonstrates that it was possible to "drive around" Asboth's vehicle, contradicting this rationale. Beneficial use of the property was not impeded because Asboth's vehicle was not blocking traffic through the storage facility.

10

¶68 Because of the lack of evidence that the vehicle was obstructing traffic at the storage facility, the majority offers a number of additional rationalizations. First, it advances that "any expense for removing the obstruction would have fallen to a private property owner uninvolved in the arrest." Majority op., ¶18. Next, it asserts that the police protected the vehicle and its contents from theft and that "Asboth no doubt would have been upset to learn that his personal property was stolen from the car." Majority op., ¶19. Finally, it contends that because the registered owner of the vehicle was someone other than Asboth, police were faced with the possibility of needing to make arrangements to return the vehicle to its registered owner. Majority op., ¶20.

¶69 The hearing testimony demonstrates that each of these proffered rationales is purely speculative. None of the officers contacted the storage facility to see whether the owner wanted the car removed nor did they contact the registered owner of the vehicle. Additionally, none of the officers recalls speaking with Asboth about whether he could arrange to have someone move the vehicle.

¶70 After dispensing with the majority's speculative justifications for its conclusion that this was a bona fide community caretaker function, I turn now to examine the reasonableness of the warrantless impoundment. A reasonableness analysis calls for consideration of both "the degree of public interest and the exigency of the situation." State v. Pinkard,

11

2010 WI 81, ¶41, 327 Wis. 2d 346, 785 N.W.2d 592 (quoting In re Kelsey C.R., 2001 WI 54, ¶36, 243 Wis. 2d 422, 626 N.W.2d 777).

¶71 In its analysis of reasonableness, the majority repeats the same justifications offered as support for its conclusion that the impoundment was a bona fide community caretaker function. Essentially, it contends that the public has a significant interest in impounding a vehicle that would "inconvenience the property's owner and users by impeding beneficial use of the property and creating a potential hazard." Majority op., ¶32.

¶72 Even if the majority could sufficiently explain how Asboth's vehicle posed a potential hazard to public safety, it errs in stating that it need not consider the exigency of the situation. Id. Acknowledging that this was not an emergent situation, the majority simply omits this consideration from its analysis. Id. Instead, it considers only the public interest, which does not justify the seizure because Asboth's vehicle was parked on private property and there was testimony that there was room to drive around it.

¶73 Finally, I turn to the majority's argument that "the lack of realistic alternatives to impoundment further reinforces the reasonableness of the seizure." Majority op., ¶35. As set forth above, however, no alternatives to impoundment were considered so there is no evidence as to whether there were realistic alternatives to impoundment. Again, this is pure speculation on the part of the majority.

¶74 Considering the facts of this case, it appears that the impoundment may have been a pretext for an investigatory police motive. See, e.g., Sanders, 796 F.3d at 1245 (explaining that Bertine establishes that impoundment is unconstitutional where police discretion is "exercised as a pretext for criminal investigation.").

¶75 Just before the vehicle was impounded, Asboth was arrested on a probation warrant. The car was towed to a city police impound lot, where it was subsequently searched. During the search, police removed and held all items of apparent value, including a pellet gun that was found in the vehicle. The officers conducting the search testified that they considered it to be an inventory search, and conducted it according to their inventory search procedures. However, one officer conducting the search filled out a form indicating that it was done to obtain "evidence," rather than the other possible purposes listed on the form, including "abandoned," "parked in traffic" or "safekeeping."

¶76 Contrary to the majority, I conclude that the lack of a compelling public safety need to move Asboth's car suggests that the police were motivated by the investigation of the armed robbery in which he was a suspect. Not only are the rationales offered by the majority hypothetical, but they could be applied to virtually any vehicle, parked anywhere, at any time. In Clark, this court rejected a policy that "might lead to the police towing every unlocked vehicle on the street." 265 Wis. 2d 557, ¶16. Likewise, the majority's conclusion may

justify the seizure of every vehicle after its driver has been arrested.

¶77 Thus, I conclude that the impoundment of Asboth's vehicle was unconstitutional. His vehicle was parked on private property, was not obstructing traffic and posed no imminent threat to public safety. Under such circumstances, in order to survive constitutional scrutiny, the impoundment must be justified by both a standardized policy that limits police discretion and a reasonable, non-pretextual community-caretaking rationale. Here there was neither.

II

¶78 Ultimately, I comment on what I and other members of this court have repeatedly warned: a broad application of the community caretaker doctrine "raises the specter that the exception will be misused as a pretext to engage in unconstitutional searches that are executed with the purpose of acquiring evidence of a crime." Pinkard, 327 Wis. 2d 346, ¶75.

¶79 I have previously voiced the concern that "today's close call will become tomorrow's norm." Id., ¶66. Over the years, that is exactly what has happened. In case after case, this exception to the Fourth Amendment's warrant requirement has expanded well beyond the limits of a bona fide community caretaker function that is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." State v. Kramer, 2009 WI 14, ¶23, 315 Wis. 2d 414, 759 N.W.2d 598 (internal quotes and citations omitted).

14

¶80 With today's decision, community caretaking has again become an end in itself, justifying warrantless impoundments so long as the police can articulate "a hypothetical community need." Matalonis, 366 Wis. 2d 443, ¶106 (Prosser, J., dissenting). The majority embraces the State's hypothetical. It reasons that the police served a legitimate public interest by impounding a vehicle that inconvenienced a private business and its customers and created a hazard by obstructing vehicle traffic through the storage facility. Majority op., ¶32.

¶81 Not only has the majority opinion lowered the floor by deviating from the national trend requiring standardized criteria, it also has opened a trap door so that the community caretaker exception may become bottomless. If the community caretaker impoundment of Asboth's vehicle parked on private property can be justified due to inconvenience, would any warrantless seizure be unreasonable in this context? When an exception to the Fourth Amendment becomes the rule, the privacy rights of motorists do not receive the constitutional protections they deserve.

¶82 Accordingly, I respectfully dissent.

¶83 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

15